## Commonwealth v. Bowman

*Edward M. Bell,* district attorney, for Commonwealth.

*George H. Rowley,* for defendant.

McKAY, P. J., February 10, 1966.—Defendant, having waived a hearing before a justice of the peace on a motor vehicle violation, has moved to quash the in-

formation. The ground of the motion is that it charges him with operating a motor vehicle in violation of subsection (a), sec. 1002 of The Vehicle Code of April 29, 1959, P. L. 58, as amended, commonly known as "driving too fast for conditions", but fails to specify the speed at which he operated the vehicle.[1] The information charges that defendant "did unlawfully then and there operate said motor vehicle at a greater rate of speed than was reasonable and proper, without having due regard to the traffic surface width of the highway, and of any other restrictions or conditions then and there existing, to wit: He had no regard for traffic in front of him at a point where the highway narrowed. As a result, he left skid marks for 148 feet in his attempt to stop, ending up striking another vehicle". The information adds that this is in violation of subsection (a), sec. 1002 of The Vehicle Code, etc.

The specific question now before the court has been raised in a number of cases and answered differently in different quarter sessions courts of the State. That question is whether subsection (e) of section 1002 of the code, 75 PS §1002(e), applies to subsection (a) of section 1002. By the precise language of subsection (e), the insertion in the information of the speed of defendant's vehicle is made mandatory. That subsection reads:

"In every information charging violation of this *section*,[2] reference shall be made to this *section* and *subsection* alleged to have been violated, specifying the speed at which the defendant is alleged to have driven". (Italics supplied.)

Accordingly, there is respectable authority for the

---

[1] The figures 35 were subsequently inserted in the concluding phrase, "by driving at a rate of speed up to and including —— miles per hour". But it is the information as originally filed in which these figures did not appear that is now before the court.

[2] Note that the entire section, i.e., section 1002, is designated.

position that an information drawn under subsection (a) of section 1002 should specify the speed. These include Commonwealth v. Reese, 1 D. & C. 2d 741; Commonwealth v. Fish, 15 D. & C. 2d 360; Commonwealth v. Fry, 65 D. & C. 551; and Commonwealth v. Stroh, 71 D. & C. 378. These cases hold that when language of a statute is plain and unambiguous and conveys a clear meaning, there is no occasion for resorting to rules of statutory construction, and the statute must be given its plain and obvious meaning, and the court may not speculate as to the possible intention of the legislature. A further reason for so construing the act is that section 1002 of The Vehicle Code is penal in nature and, therefore, must be strictly construed.

On the other hand, there are other lower court cases in which a contrary result has been arrived at. Among them are Commonwealth v. Hazy, 66 D. & C. 451; Commonwealth v. Feyka, 62 D. & C. 353; Commonwealth v. Weber, 33 D. & C. 488.

The most convincing reason in support of the latter view is that offered by Knight, P. J., in the Hazy case, supra, at page 452, when he states that:

"In such cases, it would be almost impossible to fix, with any degree of accuracy, the speed of a motor vehicle except by the general statement, 'too fast for conditions'. There may be a thick fog, and a driver proceeding at a slow speed and yet too fast to stop within the assured clear distance ahead, collides with another vehicle. The mere fact that such an accident happened would be enough to draw an inference that the driver was proceeding at a speed too fast for conditions. On icy streets, in thick traffic, and in other situations a driver may be proceeding too fast for conditions, and yet it would be impossible to fix the rate of speed, and how, under such circumstances, could the speed be ascertained by the methods prescribed in subsection (d) of Section 1002?

"We do not think the legislature ever intended such a result. We are of the opinion that subsection (e), so far as it requires the information to specify the speed at which defendant is alleged to have driven, does not apply to subsection (a)".

The latter rule seems to us to be the sounder. When one looks at section 1002 as a whole, he is forced to the conclusion that the legislature, despite the clear language in subsection (e), never intended that subsection to apply to subsection (a), but only to the other subsections. For example, subsection (b) undertakes to set forth specific speed limits under certain given situations and conditions, such as when vehicles are passing streetcars, discharging passengers at an intersection where safety zone has been established, passing a school building during school recess or while children are going to or leaving school during opening or closing hours, approaching within 200 feet of a railroad grade crossing, in business districts where official signs have been erected and the general 50 and 75 mile-an-hour speed limits on unrestricted highways and turnpikes. In such situations, the information should specify the exact speed at which the vehicle was traveling. But this reasoning is inapplicable to subsection (a).

Again, subsection (d) specifies the manner in which the rate of speed may be determined in a business or residence district and on the open highway. In the former case, two officers with stop watches are used. In the latter, speedometers tested for accuracy are required, or radar may be used in either.

On the other hand, subsection (a) contains very general language. The speed is to be ". . . not greater than nor less than is reasonable and proper, having due regard to the . . . conditions . . . existing . . . [not to be sufficient] as to endanger the life, limb, or property of any person, nor at a speed greater than will permit him [the driver] to bring the vehicle to a stop

within the assured clear distance ahead". Not only would it ordinarily be impossible for an arresting officer or any other witness to estimate the exact speed of a vehicle under most of these situations, but the exact speed is essentially irrelevant, for the violation depends entirely upon the driving conditions. Take, for example, the information which is before us. Here, the highway narrowed; there was traffic in front of defendant, and in defendant's attempt to stop to avoid striking the car ahead, he caused his wheels to skid for 148 feet. This is obviously a violation of subsection (a), but such a violation almost invariably occurs when no one is in a position to even express an opinion of the operator's speed, and certainly no police officer with a tested speedometer would be following him for one quarter of a mile, nor would two officers one eighth of a mile apart be on hand with stop watches. Nevertheless, the fact that defendant was driving his car so fast that in attempting to stop it, he skidded 148 feet, clearly disclosed a violation. To hold that subsection (e) applies to situations of this sort would be to render a prosecution under subsection (a) ordinarily impossible, and would make the effort of the legislature to proscribe that type of driving ridiculous. It is not to be presumed that the legislature, whatever the language it uses, intended to forbid certain conduct as unlawful, attach a penalty to it, and then make it impossible for anyone to prove that the section was violated.

It is more likely that the attention of the legislature was not directed to the incongruity of its comprehensive language at subsection (e), and that it merely overlooked excepting subsection (a) from the provisions of the former subsection. Further, if subsection (e) were taken literally, the prosecutor, in order to meet the requirements of the act, would guess at a speed in framing his information and would later be unable to prove it, this under a subsection, and the only

subsection where any specified rate of speed is not essential to the commission of the offense.

Accordingly, we make the following

ORDER

Now, February 10, 1966, it is ordered that the motion of defendant in the above-entitled case to quash the information is overruled.